**AMES PRIVILEGE ASSOCIATES LIMITED PARTNERSHIP, Plaintiff,**

v.

**UTICA MUTUAL INSURANCE COMPANY, Defendant.**

**Civ. A. No. 89–30079–F.**

United States District Court, D. Massachusetts.

May 24, 1990.

Francis D. Dibble, Jr., Bulkley, Richardson and Gelinas, Springfield, Mass., for plaintiff.

Denenberg, Tuffley, Bocan, Jamieson, Black, Hopkins & Ewald, P.C., Charles R. Tuffley, Bruce N. Moss, Southfield, Mich., Kathleen C. Stone, Stephen E. Goldman, Robinson & Cole, Hartford, Conn., for defendant.

## MEMORANDUM AND ORDER

FREEDMAN, Chief Judge.

### I. INTRODUCTION

This diversity case was originally brought by Ames Privilege Associates Limited Partnership ("plaintiff" or "Ames") against Utica Mutual Insurance Company ("defendant") in Hampden County Superior Court, Commonwealth of Massachusetts. The defendant is a New York corporation,

and none of the Ames partners are citizens of New York. In April 1989, the case was removed to this Court on the defendant's motion. In May 1989, the defendant filed a demand for a jury trial and began the process of discovery.

On November 22, 1989 the defendant filed a motion for summary judgment, which was accompanied by a lengthy brief and fourteen exhibits. On December 14, 1989 this Court granted the plaintiff additional time to respond to the defendant's summary judgment motion. On December 28, 1989, over the defendant's objection against granting the additional time, the plaintiff responded with a Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Memorandum"). The defendant filed a brief in reply thereto on May 16, 1990.

The Court will now grant the defendant's motion for summary judgment.

## II. FACTS

### A. Facts Pertinent to the Dispute

In 1984, the Ames partners purchased several factory buildings in Chicopee, Massachusetts which had been originally constructed in 1847. The buildings were renovated and converted into a 138–unit apartment complex. After taking occupancy, tenants began complaining of soft spots in the floors of some of the apartment units. The City of Chicopee's building inspector found serious structural flaws in one wing of the complex, and revoked the occupancy permit for fifty-nine of the apartment units. As will be fully discussed below, "the structural damage was the result of a fungal infection which had acted upon the wooden components of the building." Plaintiff's Memorandum at 2. This fungal infestation is "commonly known as wood rot." *Id.* at 14.

The defendant issued a Comprehensive General Liability Insurance policy ("the policy") to Ames which covered the complex between August 1, 1987 to August 1, 1988. In its complaint, the plaintiff claims the policy provides coverage for lost rental income of $20,000 per month since May 1988

and reconstruction costs of over $2,000,000. Count I of the complaint asks this Court to declare the defendant liable for the costs of repairs and lost rental income. Count II alleges breach of contract. Count III alleges the defendant has willfully acted with unfairness, bad faith, and deception and is therefore liable for triple damages under Mass.Gen.Laws chs. 93A and 176D.

However, an exclusion in the policy states in pertinent part that the defendant will not insure against loss caused by or resulting from the following perils:

(1)(a) wear and tear, deterioration, rust or corrosion, *mould, wet or dry rot, inherent or latent defect,* animals, birds, vermin, insects;

. . . .

(c) *settling, cracking, shrinking, bulging or expansion of pavements, foundations, walls, floors, roofs or ceilings;*

(d) faulty workmanship, material, construction or design;

Exclusion A(1), page 1 of the policy's Special Coverage Endorsement, attached to Defendant's Petition for Removal, and Exhibit 14 attached to Defendant's Motion for Summary Judgment (hereinafter "Exclusion A(1)") (emphasis supplied). Further, there is an exclusion to the exclusion upon which the plaintiff places great emphasis. The exclusion to Exclusion A(1) states that the defendant will not provide coverage for the perils listed above, *"unless loss by a peril not excluded* in this Endorsement ensues, and then the Companies shall be liable for only such ensuing loss." *Id.* (emphasis supplied). Construction of Exclusion A(1) is the basis for the plaintiff's claim.

### B. Additional Facts

The process of discovery has revealed additional information regarding the infestation of rot which caused the structural damage to the plaintiff's property. The defendant has obtained and submitted to the Court a Biological and Structural Evaluation by Capital Materials Testing, Inc. ("Evaluation") which was conducted for the plaintiff in August 1988 by an independent testing laboratory which inspected the Ames apartment complex. The Evaluation

explains that the late stages of decay are "easily recognized" because the fungi can cause the color of infected wood to change to an unnatural brown or white, and can cause shrinking and cracking of wood. The type of fungi which infected the plaintiff's apartment complex "is commonly found in structures that have been neglected for some time." Evaluation at 5, submitted as Defendant's Exhibit 7.

In preparing the Evaluation, the inspectors removed some sections of the floor and ceiling finishes which had been applied during the renovation. Obvious signs of fungal decay were found on beams which had been cut open to install modern plumbing, *id.* at 8, and on a sixteen-square-foot area of floor decking, *id.* at 9. Inspectors found a "large amount of water staining" and buckled and cracked beams and planking which were so decayed that "an awl could be pushed through the decking." *Id.* at 10. Other wooden beams were found to be "hollowed out," "soft," "split," cracked and deflected. *Id.* at 13–14. A new piece of pressure-treated lumber was found nailed near roof rafters and decking which had been badly damaged by fungus. *Id.* at 21. The decayed wooden ceiling of one apartment was found "hanging loose" from beams which had been "shimmed." *Id.* at 24. In more severe areas of decay, inactive fungus was found on cracked beams and near decayed flooring with missing planks, soft spots, and water stains. *Id.* at 25. It is unnecessary to continue listing the numerous other distressing discoveries made during the 1988 inspection.

The inspectors state that the moisture which fed the fungus in the apartments came from a leak in the roof. But this leak had been repaired during the renovation. The structural damage was obvious once the cosmetic finishes installed during the renovation were stripped away, yet most of the damaged wooden members contained either inactive fungus or no remaining evidence of fungus. Much of the damage had been done before the renovation had been undertaken. The basement of the complex was a different story, where active fungus was found in wooden beams near a leaky stone wall. *Id.* at 46.

The inspectors concluded that the fungal rot condition existed before Ames bought the buildings, and that the "conditions were not recognized for the potential damage capabilities [and] replaced." *Id.* at 47. The plaintiff chose not to supply the Court with the Evaluation.

The defendant also hired its own expert to inspect the renovated buildings. He reached the same conclusion and stated that "[t]he decay problems in the apartment building developed over a period of many years *and should have been obvious to those engaged in the modification of the building to an apartment complex.*" Affidavit of Anders E. Lund at 4, submitted as Defendant's Exhibit 1 (emphasis supplied). In apparent recognition of this conclusion, the plaintiff sued the project architect, the contractor and its consultants for negligence in June 1988. *See* Complaints, *Ames v. Daniel O'Connell's Sons, Inc. and Carlson and Schmitt Architects, Inc.,* No. 88–1092 (Super.Ct. Hampden County June 17, 1988), submitted as Defendant's Exhibit 2; *Ames Privilege Associates Limited Partnership v. O'Connell Engineering & Financial, Inc.,* No. 88–1091 (Super.Ct. Hampden County June 17, 1988), submitted as Defendant's Exhibit 3. The plaintiff also chose not to inform this Court of its claim against the architect and contractor until it filed its memorandum in answer to the defendant's summary judgment motion. Plaintiff's Memorandum at 2 n. 1.

## III. DISCUSSION

### A. Standard of Review

Federal Rule of Civil Procedure 56(c) allows summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Summary judgment will not be granted where there exists a dispute "over facts that might affect the outcome of the suit under the governing law...."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1985). In considering a motion for summary judgment, the "judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Id.* at 252, 106 S.Ct. at 2512. The Court must examine the record "in a light most favorable to the plaintiff." *Rossy v. Roche Products, Inc.*, 880 F.2d 621, 624 (1st Cir.1989); *Oliver v. Digital Equipment Corporation*, 846 F.2d 103, 108 (1st Cir.1988). "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may be resolved in favor of either party." *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511.

### B. Plaintiff's Argument

■ The plaintiff argues that Exclusion A(1) does not preclude coverage under the Utica Mutual policy. However, subsection A(1)(a) excludes coverage resulting from wet or dry rot. Subsection A(1)(c) excludes damage resulting from settling, cracking, or shrinkage of walls, floors, roofs or ceilings. "Where there is no ambiguity, we will construe the terms of an exclusionary clause according to their ordinary meaning." *Thomas v. Hartford Accident & Indemnity Co.*, 398 Mass. 782, 785, 500 N.E.2d 810, 812 (1986), *citing Royal–Globe Ins. Co. v. Schultz*, 385 Mass. 1013, 434 N.E.2d 213 (1982). This policy has clearly and unambiguously excluded damage resulting from rot.[1]

The plaintiff attempts to use the "ensuing loss" clause which appears at the end of Exclusion A(1) as a way of nullifying the exclusion for rot. The "ensuing loss" clause provides coverage for losses caused by *other perils* which are not excluded in the policy endorsement.

Different plaintiffs attempted this same approach in an earlier case, *Aetna Casualty & Surety Co. v. Yates*, 344 F.2d 939, 940–41 (5th Cir.1965) ("ensuing loss" clause did not provide coverage for rotted wooden subfloors and sills under homeowner's policy which specifically excluded damage cause by rot). Although the losses in *Yates* were minor compared to the instant case, *Yates* presented striking factual similarities in which the:

> plaintiffs turned to their All Risk policy, [and] they found this disheartening exclusion:
>
> > i. Loss caused by inherent vice, wear and tear, deterioration; rust, rot, mould or other fungi; dampness of atmosphere, extremes of temperature....
>
> Plaintiffs' loss could be said to be "caused" by the defective construction of the house, arguably an "inherent vice"; it was a "deterioration," although perhaps not "caused" by deterioration; it surely was caused by "rot"; the rot almost certainly had been caused by "fungi"; and "dampness of atmosphere" had produced the condition in which the fungi could grow and do their work. *Undaunted by this, plaintiffs read on* and took hope when they came to the following:
>
> > * * * Exclusions i, j, and k shall not apply to ensuing loss cause by collapse of building, water damage, or breakage of glass which constitutes part of the building, provided such losses would otherwise be covered under this policy.
>
> Plaintiffs say that since the loss was caused by the condensation of moist air into water, and was not within another exclusionary clause, "d" covering loss from water as therein described, the exclusion from the exclusion prevails.
>
> Plaintiffs put more weight on the last quoted clause than it will bear.

*Id.* (footnotes omitted) (emphasis supplied). The plaintiff in the instant case also at-

---

1. The Court notes that the plaintiff's memorandum restates (Exclusion A(1)), yet does not even acknowledge the subsection (c) exclusion concerning settling and cracking of building components. Plaintiff's Memorandum at 15.

tempts to avoid a plain reading of Exclusion A(1) by focusing on something in the ensuing loss clause which is not there.

Exclusion A(1) excludes coverage for loss caused by "wet or dry rot." This is the very cause of damage alleged by the plaintiff. The loss was the result of "deterioration." Additionally, damage resulting from "settling" and "cracking" of "walls, floors, roofs or ceilings" is also excluded, and this is the very damage for which the plaintiff is seeking to collect. These are perils which are excluded by the policy. They cannot be, at the same time, perils which are not excluded, and for which the defendant would be liable for any ensuing loss. The plaintiff's determination to proceed with such an argument in the face of such clear language rivals the determination of those who looked at a 137–year old building which had been exposed to the elements for many years, and proceeded to renovate it without checking the watermarks and decay on its wooden timbers.

It is not necessary to apply further exclusions, which the plaintiff might dispute. The decayed beams and floors could certainly be considered "inherent or latent defects." The act of carpeting over decayed floors, or hiding rotted beams behind wallboard might be categorized under the "faulty workmanship, material, construction or design" exclusion. However, there is no need to consider these exclusions, since the damage was clearly the result of rot.

Since the policy does not cover the plaintiff's loss, there are no grounds for the claims alleged in Counts II and III.

#### C. Continuing Occurrence Theory

The "continuing occurrence" theory discussed by the plaintiff is not viable, as the Court explains more fully today in the case of *Ames Privilege Associates Limited Partnership v. Allendale Mutual Insurance Co.*, 742 F.Supp. 700 (D.Mass.1990). Even if the continuing occurrence theory were legally viable in Massachusetts, it would certainly not be applicable here, given the facts presented in the Evaluation commissioned by the plaintiff. The defendant insurer would be liable for losses resulting from a continuing occurrence only before the date that the insured knew or should have known of the damages. In this case, the fungal rot decay should have been as apparent to those responsible for undertaking this multi-million dollar investment, as it was to the plumber who cut into a decayed beam to install a pipe, or the carpenter who installed a new pressure treated timber in a feeble attempt to shore up the massive rot which had spread through the building.

### IV. CONCLUSION

Accordingly, the defendant's motion for summary judgment is GRANTED. The plaintiff's complaint is DISMISSED on all counts.

It is So Ordered.