**SENTINEL MANAGEMENT COMPANY, et al., Respondents,**

**Aetna Casualty and Surety Company, et al., Defendants,**

v.

**NEW HAMPSHIRE INSURANCE COMPANY, Appellant.**

No. C8–96–2335.

Court of Appeals of Minnesota.

May 13, 1997.

Thomas A. Pearson, Paul A. Banker, Arthur, Chapman, Kettering, Smetak & Pikala, Minneapolis, Stuart Cotton, Wayne R. Glaubinger, Jeffrey C. Crawford, Mound, Cotton & Wollan, New York City, for Appellant.

Lawrence A. Moloney, Doherty, Rumble & Butler, P.A., Minneapolis, Thomas R. Meites, Paul W. Mollica, Meites, Frackman, Mudler & Burger, Chicago, IL, for Respondents.

Considered and decided by LANSING, P.J., and SHORT and KLAPHAKE, JJ.

## OPINION

SHORT, Judge.

After denying summary judgment for New Hampshire Insurance Company (New Hampshire), the trial court certified certain insurance coverage issues as important and doubtful pursuant to Minn. R. Civ.App. P. 103.03(h). On appeal, New Hampshire argues the asbestos contamination of residential rental properties owned by Sentinel Management Company is not a covered loss under Sentinel's all-risk insurance policy.

## FACTS

Sentinel Management Company and other general and limited partnerships (collectively, Sentinel) own and manage certain residential rental properties in the Twin Cities. In 1991 and 1992, Sentinel purchased "all-risk" first-party insurance coverage from

New Hampshire. The relevant parts of the policy state:

### III. PERILS INSURED AGAINST

Coverage: This policy is extended to insure against *all risks of direct physical loss* to building(s), subject to provisions and stipulations herein * * *.

\* \* \* \* \* \*

### V. EXCLUSIONS

In addition to the provisions of POP–220 and part A this policy does not insure under this form against:

D. Loss caused by:

1. *Wear and tear,* deterioration, rust or corrosion, mould, wet or dry rot, inherent or latent defect; smog; smoke, vapor or gas from agricultural or industrial operations; mechanical breakdown, including rupture or bursting caused by centrifugal force; settling, cracking, shrinkage, bulging or expansion of pavements, foundations, walls, floors, roofs or ceilings; animals, birds, vermin, termites or other insects; *unless loss by a peril not otherwise excluded ensues* and then the company shall be liable for only such ensuing loss.

\* \* \* \* \* \*

This Policy Does Not Insure Under This Form Against:

A. Loss occasioned directly or indirectly by:

1. *Enforcement of any local or state ordinance or law regulating the construction, repair or demolition of buildings* or structures unless such liability is otherwise specifically assumed by endorsement.

(Emphasis added.) Although the comprehensive general liability part of Sentinel's policy contains a contamination exclusion, the first-party section does not.

Sentinel's apartment buildings were built between 1962 and 1978, with asbestos-containing materials (ACMs) incorporated in ceiling and floor tiles, surface treatments, and thermal and mechanical systems insulation. In 1992, experts retained by Sentinel concluded all the buildings contained asbestos fibers on carpeting and other surfaces, released from the ACMs by abrasions from normal residential and building maintenance activities. While asbestos left undisturbed in building materials does not pose a health risk, released asbestos is a known carcinogen. The buildings remain occupied, however, and Sentinel has not yet taken action to remove the asbestos fibers. No ordinances or regulations require Sentinel to abate the contamination.

Sentinel brought suit against New Hampshire and its other insurance carriers in 1994, claiming it had suffered a direct, physical loss from the release of asbestos fibers and resultant contamination of the buildings. The trial court granted summary judgment in favor of the other insurers, finding coverage had not been triggered until Sentinel discovered the asbestos contamination while New Hampshire's policy was in effect in 1992. New Hampshire moved for summary judgment, arguing the claimed losses did not fall within the coverage of its all-risk policy. The trial court denied New Hampshire's motion, but certified the following question as important and doubtful:

Whether a loss resulting from the release of asbestos fibers in a residential building caused by abrasions of asbestos-containing materials, air circulation and building vibrations is a covered peril under an all-risk, first-party property insurance policy?

New Hampshire appeals from the trial court's denial of summary judgment.

### ISSUES

I. Was Sentinel's loss from the release of asbestos fibers fortuitous?

II. Does asbestos contamination constitute a direct physical loss?

III. Is Sentinel's loss excepted from the policy's wear-and-tear exclusion by the ensuing loss clause?

IV. Is Sentinel's loss covered despite the policy's ordinance exclusion?

### ANALYSIS

On appeal from a denial of summary judgment, this court determines whether the trial court erred in its application of the law and whether genuine issues of material fact exist. *Nicollet Restoration, Inc. v.*

*City of St. Paul,* 533 N.W.2d 845, 847 (Minn. 1995). In examining the record, we view the evidence in the light most favorable to the nonmoving party. *Id.* Construction of an insurance contract presents a question of law, which we review de novo. *Transport Indem. Co. v. Dahlen Transp., Inc.,* 281 Minn. 253, 259, 161 N.W.2d 546, 550 (1968) (quoting *Leslie v. Minneapolis Teachers Retirement Fund Ass'n,* 218 Minn. 369, 373–74, 16 N.W.2d 313, 315 (1944)).

## I.

■ Generally, an "all-risk" insurance policy creates

a special type of coverage extending to risks not usually covered under other insurance, and recovery under an "all-risk" policy will, as a rule, be allowed for all fortuitous losses not resulting from misconduct or fraud, unless the policy contains a specific provision expressly excluding the loss from coverage.

13A George E. Couch, *Couch on Insurance 2d* § 48:141 (rev. ed.1982); *accord* 5 John Alan Appleman & Jean Appleman, *Insurance Law and Practice* § 3092 (rev. ed. 1970 & Supp.1997). The implied requirement of fortuity in all-risk insurance policies is universally recognized. *Adams–Arapahoe Sch. Dist. No. 28–J v. Continental Ins. Co.,* 891 F.2d 772, 775 (10th Cir.1989) (citing C.C. Marvel, Annotation, *Coverage Under "All Risks" Insurance,* 88 A.L.R.2d 1122, 1127–28 (1963)).

New Hampshire argues the asbestos contamination of Sentinel's buildings is not fortuitous because the release of asbestos fibers through ordinary wear and tear was certain to occur. *See Chute v. North River Ins. Co.,* 172 Minn. 13, 15, 214 N.W. 473, 474 (1927) (noting purpose of all-risk policy is to secure "indemnity against accidents which may happen, not against events which must happen") (citation omitted). New Hampshire's reliance on the supreme court's decision in *Chute* is misplaced. In *Chute,* the court denied the plaintiff insurance proceeds to replace an opal that cracked due to an inherent defect, noting the parties contracted for "indemnity against loss or damage from fortuitous and extraneous circumstance rather than warranty of the quality and durability of chattels." *Id.* at 15–16, 214 N.W. at 474. Sentinel, however, seeks proceeds to remove asbestos fibers released from the ACMs by extraneous forces, not replacement value for the ceilings and walls, which have worn over time. Therefore, *Chute* does not compel reversal of the trial court.

■ An occurrence is fortuitous if "the outcome of the event * * * [is not] known in advance by the insured." *Bituminous Cas. Corp. v. Bartlett,* 307 Minn. 72, 78 n. 8, 240 N.W.2d 310, 313 n. 8 (1976) (citation omitted); *Domtar, Inc. v. Niagara Fire Ins. Co.,* 552 N.W.2d 738, 746 (Minn.App.1996), *review granted* (Minn. Oct. 17, 1996). This element of risk is central to insurance contracts because "[o]ne cannot insure against a certainty." *Bartlett,* 307 Minn. at 78 n. 8, 240 N.W.2d at 313 n. 8 (citation omitted). Minnesota's treatment of fortuity is consistent with the weight of foreign authority, which has adopted the Second Restatement's view that a fortuitous event is an event

which *so far as the parties to the contract are aware,* is dependent on chance. It may be beyond the power of any human being to bring the event to pass; it may be within the control of third persons; it may even be a past event, as the loss of a vessel, *provided that the fact is unknown to the parties.*

Restatement of Contracts § 291 cmt. a (1932) (emphasis added), *quoted in University of Cincinnati v. Arkwright Mut. Ins. Co.,* 51 F.3d 1277, 1281 (6th Cir.1995), *Intermetal Mexicana, S.A. v. Insurance Co. of N. Am.,* 866 F.2d 71, 77 (3d Cir.1989), *Insurance Co. of N. Am. v. U.S. Gypsum Co.,* 870 F.2d 148, 151 (4th Cir.1989), *Adams–Arapahoe,* 891 F.2d at 775, *Peters Township Sch. Dist. v. Hartford Accident & Indem. Co.,* 833 F.2d 32, 37 (3d Cir.1987), *Fidelity & Guar. Ins. Underwriters, Inc. v. Allied Realty Co.,* 238 Va. 458, 384 S.E.2d 613, 615 (Va.1989); *see also* Appleman, *supra,* § 3092 (citing Restatement definition of fortuity). Under this view, a "loss caused by a pre-existing defect is fortuitous so long as neither party knew of the defect or expected the loss." *Adams–Arapahoe,* 891 F.2d at 775.

Sentinel seeks recovery, not for the mere presence of ACMs in the buildings, but for the release of asbestos fibers and resultant contamination. *Cf. Leafland Group–II v. Insurance Co. of N. Am.*, 118 N.M. 281, 881 P.2d 26, 28 (N.M.1994) (holding mere presence of ACMs did not constitute fortuitous loss because loss existed, albeit undiscovered, when insureds purchased building). In addition, Sentinel presented evidence that its decision to abate the contamination was not a voluntary business decision, but a response to existing damage. *Cf. Arkwright*, 51 F.3d at 1282 (finding no fortuitous loss occurred when insured chose to remove ACMs pursuant to business decision to demolish building, noting insured's voluntary action produced predictable and anticipated costs).

Viewed in hindsight, the eventual contamination of Sentinel's buildings was inevitable, due to the presence of asbestos-containing materials. *See Greene v. Cheetham*, 293 F.2d 933, 937 (2d Cir.1961) (holding loss is not fortuitous if inevitable when policy was issued). *But see Compagnie des Bauxites de Guinee v. Insurance Co. of N. Am.*, 724 F.2d 369, 372 (3d Cir.1983) (refusing to use hindsight to conclude no fortuitous loss occurred, when at time insurance policy took effect parties believed only a risk was involved). However, it is undisputed on the record before us that neither party was aware that asbestos fibers were being released in the buildings or that the buildings were suffering damage as a result. *See Domtar*, 552 N.W.2d at 747 (holding loss is fortuitous if insured does not know loss has occurred, even if insured knows of risk of future loss). Thus, so far as all parties were concerned, asbestos contamination was a risk inherent in owning twenty-year-old apartment buildings, but it was not a certainty. Under these circumstances, Sentinel's asbestos contamination constitutes a fortuitous loss because Sentinel was unaware of the asbestos damage when the insurer's policy went into effect.

## II.

Sentinel's all-risk policy provides indemnity against "all risks of direct physical loss." "Direct physical loss" provisions require only that a covered property be injured, not destroyed. *See, e.g., Adams–Arapahoe*, 891 F.2d at 777 (concluding, where corrosion caused collapse of small part of roof, that plaintiff's loss included entire corroded area because the corrosion made building unsafe); *Teeples v. Tolson*, 207 F.Supp. 212, 216 (D.Or.1962) (finding defective joints, which would have collapsed if not shored up, constituted direct physical loss). Direct physical loss also may exist in the absence of structural damage to the insured property. *See, e.g., Western Fire Ins. Co. v. First Presbyterian Church*, 165 Colo. 34, 437 P.2d 52, 55 (1968) (concluding plaintiff suffered direct physical loss to insured building when gasoline infiltrated soil surrounding basement, contaminating foundation and rooms and rendering use of building dangerous); *Hughes v. Potomac Ins. Co.*, 199 Cal. App.2d 239, 18 Cal.Rptr. 650, 655 (1962) (holding house, which was structurally undamaged but perched at edge of cliff due to landslide, suffered direct, physical loss).

New Hampshire argues asbestos contamination, absent structural damage, cannot constitute "direct physical loss" under the policy. Sentinel concedes it has neither closed its rental properties nor taken action to remove the released fibers from the buildings. However, Sentinel presented evidence showing that released asbestos fibers have contaminated the buildings, creating a hazard to human health. Although asbestos contamination does not result in tangible injury to the physical structure of a building, a building's function may be seriously impaired or destroyed and the property rendered useless by the presence of contaminants. *Cf. Farmers Ins. Co. v. Trutanich*, 123 Or.App. 6, 858 P.2d 1332, 1335 (1993) (finding pervasive odor from methamphetamine lab damaged house, resulting in direct physical loss). Under these circumstances, we must conclude that contamination by asbestos may constitute a direct, physical loss to property under an all-risk insurance policy. New Hampshire's characterization of Sentinel's loss as the cost of abating the contamination rather than the contamination itself does not transform the loss from physical to economic. *See 80 South Eighth Street Ltd. Partnership*

*v. Carey–Canada, Inc.*, 486 N.W.2d 393, 397 (Minn.) (stating, in tort context, that cost of asbestos clean-up was incurred to eliminate risk of injury and was not economic loss), *amended by* 492 N.W.2d 256 (Minn.1992); *T.H.S. Northstar Assocs. Ltd. Partnership v. W.R. Grace & Co.*, 767 F.Supp. 969, 973–74 (D.Minn.1991) (finding asbestos contamination is not economic loss even though remedy may include product removal costs); *see also Trutanich*, 858 P.2d at 1335 (holding cost of removing odor in house constituted physical loss because removal was direct rectification of physical problem). Viewing the evidence in the light most favorable to the nonmovant, the trial court properly determined that Sentinel had demonstrated a direct, physical loss to its properties. Factual issues remain concerning the existence and degree of contamination suffered by Sentinel.

### III.

Sentinel's first-party policy excludes damage caused by wear and tear "unless loss by a peril not otherwise excluded ensues and then the company shall be liable for only such ensuing loss." "Wear and tear" is the process of ordinary or natural deterioration of a building. *See Northwestern Nat'l Cas. Co. v. Khosa, Inc.*, 520 N.W.2d 771, 774 (Minn.App.1994) (noting damage to building exceeded normal wear and tear); *see also Cyclops Corp. v. Home Ins. Co.*, 352 F.Supp. 931, 936 (W.D.Pa.1973) (defining "wear and tear" as the "ordinary and natural deterioration or abrasion which an object experiences by its expected contacts between its component parts and outside objects during the period of its natural life expectancy"). To be excluded as wear and tear, damage must result from a fixed attribute of the damaged property. 10A Couch, *supra*, § 42:647.

■ The events that caused the release of asbestos fibers in the Sentinel properties include: closet doors dislodging from their tracks and scraping the ceiling; residents screwing bolts directly into the ceiling to hang plants; residents and maintenance staff accidentally striking the ceiling with broom and mop handles; and air circulating through the building. All of these events were expected, normal occurrences, which, together, contributed to the natural deterioration of Sentinel's buildings. Given these facts, the trial court correctly concluded the release of asbestos fibers was caused by ordinary wear and tear.

■ However, an "ensuing loss" clause, like the one following Sentinel's wear-and-tear exclusion, brings within coverage a loss from a covered peril that follows as a consequence of an excluded peril. *See Aetna Ins. Co. v. Getchell Steel Treating Co.*, 395 F.2d 12, 16 (8th Cir.1968) (stating "ensuing fire" is one that "follows as a consequence of" electrical disturbance); *Webster's New Universal Unabridged Dictionary* 606 (Jean L. McKechnie ed., 2d ed.1983) (defining "ensue" as "to follow as a consequence; to result"); *see also Ostendorf v. Arrow Ins. Co.*, 288 Minn. 491, 495, 182 N.W.2d 190, 192 (1970) (requiring interpretation of insurance contracts according to plain meaning of words). An ensuing loss is covered even if an excluded peril is a "but for" cause of the loss. *See, e.g., Lake Charles Harbor & Terminal Dist. v. Imperial Cas. & Indem. Co.*, 857 F.2d 286, 288–89 (5th Cir.1988) (finding coverage existed under ensuing loss clause for damage to shiploader where machinery breakdown, an excluded peril, directly caused heavy object to fall, damaging shiploader); *Allstate Ins. Co. v. Smith*, 450 S.W.2d 957, 959 (Tex.Civ. App.1970, no writ) (disallowing recovery for replacement cost of defective pipe under policy exclusion for inherent defect, but permitting recovery for ensuing damage to wall and floor that occurred when defective pipe burst).

■ Sentinel argues the release of asbestos fibers in its buildings, while ensuing from ordinary wear and tear, also constitutes a distinct peril. We agree. Damage to the buildings arising from wear and tear, such as holes in the ceilings and abrasions on walls, is separable from the asbestos contamination. The two are not different classifications of a single phenomenon. *Cf. Aetna Cas. & Sur. Co. v. Yates*, 344 F.2d 939, 941 (5th Cir.1965) (finding, under policy excluding damage from rot or dampness of atmosphere but covering ensuing loss from water damage, that excluded and covered causes were not separable events, where condensation of moisture un-

der floor boards caused damage). Furthermore, Sentinel does not attempt to use the ensuing loss provision to nullify the wear-and-tear exclusion. *Cf. Ames Privilege Assocs. Ltd. Partnership v. Utica Mutual Ins. Co.*, 742 F.Supp. 704, 707–08 (D.Mass.1990) (refusing to find coverage under ensuing loss clause in face of policy exclusion clearly applicable to claimed loss, noting given perils cannot simultaneously be excluded and covered).

We conclude the wear-and-tear and ensuing loss provisions, read together, exclude from coverage the normal results of wear and tear, but cover distinct, separable, ensuing losses like the asbestos contamination. *See Henning Nelson Constr. Co. v. Fireman's Fund Am. Life Ins. Co.*, 383 N.W.2d 645, 653 (Minn.1986) (stating term must be construed within context of exclusion as whole). Therefore, the trial court properly found the ensuing loss clause excepted Sentinel's asbestos contamination from the policy exclusion for damage caused by wear and tear.

### IV.

■■■■ A provision in Sentinel's insurance policy excludes from coverage any damage resulting "directly or indirectly" from the "enforcement of any local or state ordinance or law regulating the construction, repair or demolition of buildings." So long as extraneous forces cause physical damage to property, this type of exclusion does not defeat recovery when, as a result, a governmental body enforces an ordinance against the property. *See, e.g., Hampton Foods, Inc. v. Aetna Cas. & Sur. Co.*, 787 F.2d 349, 353 (8th Cir.1986) (finding property owner's loss resulted from weather damage to building and resulting evacuation, and condemnation decree did not cause or increase loss); *Allied Realty*, 384 S.E.2d at 617 (holding ordinance exclusion did not apply where earth pressure resulted in structural failure of warehouse, and property owner was forced to evacuate tenants before city condemned property); *see also Farmers Union Mut. Ins. Co. v. Oakland*, 251 Mont. 352, 825 P.2d 554, 556 (1992) (concluding physical damage to insured property was caused by fire, and high-

er cost of debris removal due to asbestos regulations did not bring loss within exclusion for loss caused directly or indirectly by enforcement of ordinance).

In denying summary judgment, the trial court noted Sentinel's evidence demonstrated its damages were caused by "the release of a toxic substance in its buildings, not the law's requirements that the substance be removed." Sentinel's loss is asbestos contamination; that Sentinel might one day be required by law to remove the released asbestos does not change the nature of its existing loss into one caused by enforcement of an ordinance. Therefore, the court correctly concluded the damage Sentinel suffered due to the release of asbestos fibers does not fall within the policy's ordinance exclusion.

### DECISION

Viewing the evidence in the light most favorable to the nonmovant, Sentinel's loss by asbestos contamination constitutes a fortuitous, direct, physical loss, which is excepted from the policy's wear-and-tear exclusion by the ensuing loss provision.

**Affirmed; certified questions answered in the affirmative.**