# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1166

_____

| | | |
|---|---|---|
| Source Food Technology, Inc., | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal From the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| United States Fidelity and Guaranty | * | |
| Company, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: June 12, 2006
Filed: August 22, 2006

_____

Before SMITH, HEANEY, and GRUENDER, Circuit Judges.

_____

HEANEY, Circuit Judge.

Source Food Technology, Inc. (Source Food) appeals the district court's grant of summary judgment on behalf of United States Fidelity and Guaranty Company (USFG) in Source Food's claim for insurance coverage under the business interruption policy it purchased from USFG. The district court granted summary judgment based on its determination that Source Food failed to show that it suffered a "direct physical loss" required for coverage under the policy. We reverse.

# BACKGROUND

Source Food is a Delaware corporation, operating in Minnesota, that removes the cholesterol from beef and sells the resulting product. In May 2003, Source Food's sole beef product supplier was a company located in Ontario, Canada. On May 20, 2003, the United States Department of Agriculture (USDA) closed the border to Canadian beef and beef products based on concerns related to bovine spongiform encephalopathy (Mad Cow disease). At the time of the embargo, the Canadian supplier had manufactured, packaged, and loaded for shipping, an order for Source Food. The order was never shipped due to the embargo.

The USDA's action resulted in a shutdown of Source Food's business while it secured an alternative supplier. Due to the shutdown, Source Food lost one of its primary customers, who cancelled its contact seven months early. Source Food filed a claim with USFG for the costs and loss of revenue related to the business interruption caused by the Canadian beef embargo. The USFG policy included business interruption and property damage protection and was effective at the time of the embargo. The relevant policy language states:

> (1) "Business income." We will pay the actual loss of "business income" you sustain due to the necessary suspension of your "operations" during the "period of restoration." The suspension must be caused by <u>direct physical loss to Property</u> . . . including Property Off Premises, and result from any Covered Cause of Loss.
>
> . . . .
>
> (4) Action by Civil Authority. We will pay for the actual loss of "business income" you sustain and necessary "extra expense" caused by action of civil authority that prohibits access to the described premises due to the direct physical loss to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.

(USFG Add. at 16, 18 (emphasis added).)  The policy does not define "direct physical loss."

USFG denied Source Food's claim on the basis that the loss sustained did not result from a "direct physical loss."  Source Food then filed a declaratory action against USFG and other insurers in Minnesota state court seeking an order that coverage did exist.  Source Food subsequently filed a motion for summary judgment, and USFG and the other insurers moved for dismissal for failure to state a claim.  The state court denied Source Food's motion for summary judgment and granted the motion to dismiss for all of the insurers except USFG.  USFG then removed the case to federal district court and moved for summary judgment.  The district court granted USFG's motion, rejecting Source Food's claim that it suffered a "direct physical loss" under the policy.[1]  Source Food now appeals.

## DISCUSSION

Since this case is in federal court based on diversity jurisdiction, this court applies substantive Minnesota law. State Farm Fire & Cas. Co. v. Nat'l Research Ctr. for Coll. & Univ. Admissions, 445 F.3d 1100, 1102 (8th Cir. 2006).  "Construction of an insurance contract presents a question of law, which we review de novo." Sentinel Mgmt. Co. v. N. H. Ins. Co., 563 N.W.2d 296, 299 (Minn. Ct. App. 1997). Contract "[l]anguage is to be given its plain and ordinary meaning." Gen. Mills, Inc. v. Gold Medal Ins. Co., 622 N.W.2d 147, 151 (Minn. Ct. App. 2001).

---

[1]The district court also rejected Source Food's claim that the "law of the case" doctrine precluded the court from deciding the issue of whether the impairment of function constitutes a "direct physical loss" under the policy.  Source Food abandoned its "law of the case" claim at oral argument.  Therefore, we do not address this claim.

The primary issue here is whether the Canadian beef ban resulted in a "direct physical loss" under the policy. Under Minnesota law, "direct physical loss can exist without actual destruction of property or structural damage to property; it is sufficient to show that insured property is injured in some way." Id. at 152. The district court's interpretation of Source Food's insurance policy denies Source Food the coverage that it purchased. The policy was a business interruption policy meant to cover the actual loss of business income when Source Food's business was suspended because of loss of property. Source Food's business was stopped when the United States government closed the border to Canadian beef due to the threat of Mad Cow disease, prohibiting Source Food from using beef it had purchased from its Canadian supplier. Whether Source Food's beef was actually tainted is not controlling; it was treated as tainted by the United States government.

The district court distinguished this case from General Mills, 622 N.W.2d 147, and Sentinel, 563 N.W.2d 296, based on the lack of proof of physical damage or contamination. In General Mills, the insured's property, oats, was sprayed with an unapproved pesticide. 622 N.W.2d at 150. In Sentinel, the insured's apartment buildings contained traces of released asbestos. 563 N.W.2d at 298. The district court concluded that the physical change to the covered properties in those cases was key to the Minnesota Court of Appeals' finding that each insured was covered under a "direct physical loss" provision, and the mere functional impairment was insufficient. The analysis in those cases, however, makes clear that coverage was based not so much on the contamination as its effect: it rendered the products functionally impaired. Gen. Mills, 622 N.W.2d at 152; Sentinel, 563 N.W.2d at 300-01. Neither case required tangible injury or destruction to the property for coverage to attach. Indeed, in General Mills, it was undisputed that the oats could be safely consumed, but could not be sold because they were not in compliance with FDA regulations. 622 N.W.2d at 150. Nonetheless, the Minnesota Court of Appeals held that a direct physical loss had occurred because the oats' "function [was] seriously impaired." Id. at 152 ("Whether or not the oats could be safely consumed, they legally could not be

-4-

used in General Mills' business."). Similarly here, it was governmental regulation, not an actual contamination, that rendered Source Food's beef unusable.

This case is also distinguishable from <u>Pentair, Inc. v. American Guarantee & Liability Insurance Co.</u>, 400 F.3d 613 (8th Cir. 2005). There, an insured sought coverage under the "direct physical loss" provision of its business interruption policy when a power outage caused by an earthquake in Taiwan halted production for the insured's manufacturers. <u>Id.</u> at 614. It was clear that the insured did not suffer a "direct physical loss . . . of property." <u>Id.</u> Rather, they simply lost power for a time; at most there was a delay in the supplier's production. Here, there is no dispute that Source Food's loss of the beef was a direct loss of its property, just as the oats were lost in <u>General Mills</u>.

Moreover, <u>Pentair</u> is not an absolute bar on coverage absent some physical contamination to the property. It is doubtful that the divided panel in <u>Pentair</u> would render the same result if faced with the facts here. <u>See</u> <u>Pentair</u>, 400 F.3d at 618 (John R. Gibson, J., dissenting) (stating that he would grant coverage for the insured). Even the majority in <u>Pentair</u> acknowledged that the question of whether coverage attached was "difficult," <u>id.</u> at 615, with no clear answer provided by the Minnesota Supreme Court, <u>id.</u> at 616. The loss here–a direct loss of property necessary to the insured's business–is obviously less attenuated than the situation in <u>Pentair</u>.

Reading the insurance policy here to deny Source Foods coverage takes a hypertechnical approach to contract interpretation. Source Food was denied the use of its product due to circumstances beyond its control, circumstances in which its beef was, in essence, deemed infected with Mad Cow disease. It has suffered a direct, physical loss of its beef. Source Food purchased an insurance policy from USFG to protect its business in such circumstances, and that policy should be given effect.

**CONCLUSION**

For the reasons stated above, the judgment of the district court is reversed and the case is remanded for proceedings consistent with this opinion.

GRUENDER, Circuit Judge, dissenting.

Because I conclude that Source Food suffered no "direct physical loss to Property" as required by the insurance policy, I respectfully dissent.

The Court states that coverage in *General Mills, Inc. v. Gold Medal Insurance Co.*, 622 N.W.2d 147 (Minn. Ct. App. 2001), and *Sentinel Management Co. v. New Hampshire Insurance Co.*, 563 N.W.2d 296 (Minn. Ct. App. 1997), "was based not so much on the contamination as its effect: it rendered the products functionally impaired." *Ante* at 4. However, even though coverage may have been triggered by functional impairment, the cause of the functional impairment of the oats and oat-based products in *General Mills* and the apartment buildings in *Sentinel* was the physical contamination consisting of unapproved pesticide in *General Mills* and asbestos fibers in *Sentinel*. The Minnesota Court of Appeals explained in *Sentinel* that "a building's function may be seriously impaired or destroyed and the resulting property rendered useless *by the presence of contaminants*." *Sentinel*, 563 N.W.2d at 300 (emphasis added). The beef product at issue in this case was rendered functionally impaired—it could not be transported across the border to Source Food's facilities in Minnesota and distributed to customers in the United States—not by the presence of any physical damage or contaminants but by the order of the USDA.

Moreover, I do not find the Court's attempt to distinguish *Pentair, Inc. v. American Guarantee & Liability Insurance Co.*, 400 F.3d 613 (8th Cir. 2005), to be persuasive. The argument made by the insured in *Pentair* that the loss of function of

-6-

the factories constituted "direct physical loss of or damage to property" under Minnesota law is very similar to the argument advanced by Source Food. *See id.* at 616. The *Pentair* Court rejected the position of the insured, explaining that in *Sentinel* and *General Mills*, the "insured property was physically contaminated—a building by the release of asbestos fibers in *Sentinel*, and grain by application of an unapproved pesticide in *General Mills*." *Id.* Although the Court noted that "[o]nce physical loss or damage is established, loss of use or function is certainly relevant in determining the amount of loss, particularly a business interruption loss," it refused to adopt the position that "direct physical loss or damage is established *whenever* property cannot be used for its intended purpose." *Id.* Source Food concedes that the truckload of beef product was not physically damaged or contaminated in any manner, and I would hold, consistent with *Pentair*, that mere loss of function does not constitute "direct physical loss to Property."

Applying the insurance contract as written, in my opinion, is not a hypertechnical approach. *See Ill. Farmers Ins. Co. v. Glass Serv. Co.*, 683 N.W.2d 792, 799 (Minn. 2004) ("When the language of an insurance contract is unambiguous, we interpret that language in accordance with its plain and ordinary meaning."). To characterize Source Food's inability, due to a government order, to transport its truckload of beef product across the border and sell the beef product in the United States as "direct physical loss to Property" would render the word "physical" meaningless. I also note that the Court's analysis either ignores the policy's use of the word "to" in the policy language "direct physical loss *to* Property" or substitutes the word "of" for "to," as in "direct physical loss *of* property" or even "direct loss *of* property," which are not phrases found in the policy. I find that the policy's use of the words "to property" further undermines the Court's conclusion that functional impairment of the beef product due to a border closing triggers insurance coverage under this insurance policy.

Even if I were willing to characterize the loss of intended function of this single truckload of beef product as "direct physical loss to Property," I would still hold that Source Food is not entitled to coverage based on the business interruption provision of this insurance policy. That provision of the policy covers the "actual loss of 'business income' you sustain due to the necessary suspension of your 'operations' during the 'period of restoration.' The *suspension must be caused by direct physical loss to Property . . . .*" USFG Add. at 16 (emphasis added). Source Food's business was effectively halted until it could find a new supplier in the United States, and its insurance claim sought damages for extraordinary operating expenses, loss of profits based on the early termination of its contract with a primary customer, and the cost of obtaining beef product from an alternative supplier. USFG Appendix at 184. However, as of the date of the embargo, the only beef product that Source Food had actually purchased from its Canadian supplier that it could not transport across the border was one truckload of manufactured and packaged beef product. It was not the inability to ship this single truckload into the United States that shut down Source Food's business. Rather, the closure of the border to Canadian beef over a period of time was the cause of the suspension of Source Food's business, until Source Food could find a domestic supplier.

Because the truckload of beef product was not physically damaged or contaminated in any manner, I would hold that Source Food cannot recover the loss of business income resulting from the embargo on Canadian beef under an insurance policy provision requiring a suspension of operations caused by "direct physical loss to Property." I would affirm the judgment of the district court.

_____