Edward RETTMAN, Jr., Respondent,

v.

CITY OF LITCHFIELD, et al., Appellants.

No. C1–83–1091.

Supreme Court of Minnesota.

Aug. 31, 1984.

Rehearing Denied Oct. 8, 1984.

George H. Neperud, Litchfield, for appellants.

Brian M. Olsen, Cokato, for respondent.

WAHL, Justice.

This appeal raises the issue of whether quasi-contractual relief is available to a provider of services for a project initiated under Minn.Stat. ch. 429 (1982), governing local improvements and assessments, where the parties failed to comply with the procedures mandated by chapter 429. The jury found that the City of Litchfield (hereinafter city) had led plaintiff Edward Rettman to believe he was hired to install a water main extension on his development property, that the city had benefited from Rettman's work, and that he was entitled to recover the cost of the installation plus interest. The city appeals from an order denying its motion for judgment notwithstanding the verdict or a new trial. We reverse.

Edward Rettman, a contractor and developer, gained city approval to plat a parcel of land he owned within the city limits into 19 residential lots to be known as Quiet View Acres. Because he was an experienced ditching contractor, he installed sewer and water lines within the development himself according to city specifications. The dispute in this case arose over the installation of the extension to the city water main from its former end point, approximately 2 blocks from Rettman's development, to connect with the water lines within the development.

In August 1978, Rettman petitioned the Litchfield City Council to approve the water main extension as an improvement under Minn.Stat. ch. 429. Such approval would make the installation a city project, the cost of which could then be assessed to those who benefited from the improvement. The initial, statutorily required public hearing on the petition was held in September 1978, and the city council approved the project over the protests of three of the four other potentially benefited property owners. After this hearing, the city dropped chapter 429 proceedings based on the understanding of council members and city employees that Rettman was going to do the work himself at no expense to the city to save time and money, with the hope of recouping the installation cost in the sale of the lots. Competitive bidding procedures mandated by chapter 429 were not followed, and there was no written contract.

Rettman testified that he never intended to install the water main extension at his own expense and that he thought throughout that the city was following the special assessment statute. He also testified that William Steinberg, an employee of the Litchfield Public Utilities Commission (hereinafter PUC), told him that he was low bidder on the job, based on an unsealed bid submitted without a bid bond, and that he could begin work. Rettman began work. Steinberg allowed him to use materials (pipe, etc.) that the city had on hand. Evidence at trial showed that in the past the city had supplied materials to contractors in order to expedite projects and had then billed the contractor for the cost of the materials.

The water main extension was completed by the early months of 1980. It served only the 19 lots in the development, Quiet View Acres, and does not have the capacity to be further extended. Steinberg died in May 1981, and it was not until the following fall that a PUC employee found the list of materials furnished to Rettman. The PUC forwarded the list to the city, which sent a bill to Rettman for $11,120.66 on January 2, 1982. Rettman's only response was to send a bill to the city for $16,522.50 for installation of the water main extension.

As he sold lots in Quiet View Acres, Rettman told buyers and the real estate agent who handled some of the sales that the water and sewer were in and paid for and that there would be no future assessments for those services. He testified at trial that he knew there would be an assessment for the water main extension but that he intended to pay the entire amount assessed against the Quiet View Acres property.

Rettman brought suit against the city on theories of contract, quasi-contract, and negligence for the $16,522.50 cost of installation. He also alleged willful indifference to his rights and asked punitive damages. The city counterclaimed for the $11,120.66 worth of materials it had furnished to Rettman for the project, the $1,600 it had spent on repairs because of defective installation of the water main, and the $3,646.55 it had spent resurfacing the street torn up by Rettman in making the installation. The city has not appealed from the denial of its counterclaim but does raise the following issues:

1) whether quasi-contractual relief is available to Rettman for providing services for a project initiated under Minn.Stat. ch. 429 where the parties failed to comply with the mandates of that chapter;

2) whether the evidence supports recovery in quasi-contract even if such a remedy is available.

A third issue as to whether the jury award of prejudgment interest was appropriate, and Rettman's issue, raised by notice of review, with regard to an award of attorney fees under Minn.Stat. § 549.21 (1982), we need not address because of our decision in the case.

1. We note at the outset that, on the record before us, the only theory on which Rettman may possibly recover is that of quasi-contract. Any express contract Rettman may have had with the city was void for lack of compliance with the bidding procedures required by statute. *Layne Minnesota Co. v. Town of Stuntz,* 257 N.W.2d 295 (Minn.1977). Our cases set out the rule, however, that a contractor may recover under the theory of quasi-contract where the city had the power to contract but failed to comply with statutorily required procedures. *Kotschevar v. North Fork Township,* 229 Minn. 234, 39 N.W.2d 107 (1949). *Kotschevar* and the cases cited therein, as well as the few cases in this area decided subsequently,[1] involved situations where the alleged contracts were void

for failure to comply with Minn.Stat. § 471.345 (1982), the Uniform Municipal Contracting Law, or its predecessor statutes. Section 471.345 prescribes procedures for municipalities to follow in letting general contracts for services and public projects. Its major purpose is to ensure fairness to contractors and to provide for competitive bidding to keep costs down. Under section 471.345 the city is the purchaser of the service or improvement involved. As a result, the general tax base is used to provide an improvement that benefits the city as a whole, such as a new water supply well, *Layne Minnesota Co. v. Town of Stuntz;* road repairs, *Buffalo Bituminous, Inc. v. Maple Hill Estates, Inc.,* 311 Minn. 468, 250 N.W.2d 182 (1977); a new road, *Kotschevar v. North Fork Township;* or a bridge, *Lundin v. Butternut Valley Township,* 172 Minn. 259, 214 N.W. 888 (1927).

The statute involved in this case, however, is chapter 429, the Local Improvement, Special Assessments Statute. Chapter 429 exists to allow municipalities to finance local improvements, such as water and sewer services, curbs and gutters, and street lighting, and then to recover the costs of installing such services by assessing the property owners benefited by the improvement. The role of the city is to ensure that the work is properly done and to provide front-end financing. The result is that people who benefit from such localized improvements are the ones who eventually pay for them through assessments. The city argues that, because chapter 429 improvements are of the kind that usually do not benefit the city as a whole, there can never be recovery under quasi-contract for work performed on those improvements. We agree that it is important for a city to comply strictly with the mandates of chapter 429, but we cannot agree with so broad a claim. Some of the improvements listed in Minn.Stat. § 429.021 (1982), such as parks, playgrounds and pedestrian skyways, could benefit the city as a whole.

---

1. *See Layne Minnesota Co. v. Town of Stuntz,* 257 N.W.2d 295 (Minn.1977), and *Buffalo Bitu-* *minous, Inc. v. Maple Hill Estates, Inc.,* 311 Minn. 468, 250 N.W.2d 182 (1977).

There must be, however, a strong showing of benefit actually received by the city as a whole to allow recovery under quasi-contract for improvements governed by chapter 429, and we so hold.

 Recovery under quasi-contract, because it is an action in equity, is based on whether a benefit is conferred. The amount of recovery is limited to the value of the benefit actually received. *Kotschevar*, 229 Minn. at 234, 39 N.W.2d at 107. The dispositive question in this case is whether the city actually received any benefit from the installation of the water main extension. The question of whether the city actually benefited is one of fact. The jury here found that there was a benefit to the city. The only benefit argued was the increased property tax the city would receive as a result of the development of the 19 lots. In reviewing the facts in a case where a motion for judgment notwithstanding the verdict has been denied, we must affirm if there is any competent evidence reasonably tending to sustain the verdict. *Seidl v. Trollhaugen, Inc.*, 305 Minn. 506, 507, 232 N.W.2d 236, 239 (1975). "Unless the evidence is practically conclusive against the verdict, we will not set the verdict aside." *Sandhofer v. Abbott-Northwestern Hospital*, 283 N.W.2d 362, 365 (Minn.1979). At trial, Rettman's counsel argued that the increased taxes generally were a benefit to the city. There is no evidence as to the amount of the increased taxes or what portion of them is related to the installation of the water main. We hold that the evidence in this case is practically conclusive against the jury finding of the existence of a benefit to the city.

Rettman relies on *Olsen v. Independent & Consolidated School District No. 50*, 175 Minn. 201, 220 N.W. 606 (1928), for the proposition that all that he need prove is the value or worth of his services to establish a prima facie case as to benefit to the city. We do not agree. In *Olsen*, the benefit argued flowed directly from the service performed, the remodeling of a building based on architectural plans for which the school board refused to pay because the architect was not hired following proper procedures. Here, increased taxes are, at best, an indirect benefit of the water main extension, if they are a benefit at all to the city as a whole. Every witness who testified to the increased taxes as a benefit pointed out that the city must also provide increased services, the cost of which should be offset against the increased taxes. We hold that the general allegation of increased taxes resulting, in part, from a local improvement is insufficient to establish a prima facie benefit actually received by the city. There must be some more tangible public benefit related to the actual improvement.

The result of this decision is that Rettman, for the most part, will have paid for the installation of the water main extension, $16,522.50. The city, which is not without fault here, has paid $11,120.66 for the materials used and will not recover that amount from Rettman. By his own testimony, Rettman would have paid the major share of any assessment for the improvement had chapter 429 proceedings been followed. It is likely that his share would have exceeded $16,522.50. The taxpayers of the City of Litchfield have no obligation to pay for a local improvement which directly benefits so few persons.

Reversed.