**FAIRVIEW HOSPITAL AND HEALTH CARE SERVICES, Respondent,**

v.

**ST. PAUL FIRE & MARINE INSURANCE COMPANY, Petitioner, Appellant.**

No. C9–93–2524.

Supreme Court of Minnesota.

Aug. 4, 1995.

Rehearing Denied Sept. 20, 1995.

Charles E. Spevacek, Stacy Ann Broman, Meagher & Geer, Minneapolis, for appellant.

Maclay R. Hyde, Nicholas N. Nierengarten, Rick E. Kubler, Charles Kenneth Maier, Alan T. Held, Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, for respondent.

## OPINION

TOMLJANOVICH, Justice.

On January 8, 1992, respondent Fairview Hospital and Health Care Services (Fairview) commenced a declaratory action in Hennepin County District Court against appellant St. Paul Fire & Marine Insurance Company (St. Paul) seeking a ruling of entitlement to indemnification under insurance policies issued by St. Paul. Fairview sought coverage for costs incurred as a result of its liability for environmental contamination at two landfills located in Anoka County: the East Bethel Sanitary Landfill and the Oak Grove Sanitary Landfill. On September 8, 1993, the district court granted summary judgment in favor of St. Paul, concluding that no genuine issue of material fact existed as to whether an actual injury had occurred during the policy periods. The court of appeals reversed the judgment of the district court and held that a genuine issue of material fact did exist. *Fairview Hosp. & Health Care Servs. v. St. Paul Fire & Marine Ins. Co.*, 518 N.W.2d 41, 44–45 (Minn.App.1994). In addition, the court of appeals remanded to the district court the issue of whether St. Paul breached its duty to defend Fairview. *Id.* at 45, 46. We affirm.

At issue in this case is whether six annual comprehensive hospital liability policies issued to Fairview covering the period of May 9, 1966 to May 9, 1972 provided coverage for liability incurred as a result of environmental contamination at the East Bethel Sanitary Landfill and the Oak Grove Sanitary Landfill. Under these policies St. Paul agreed:

> To pay on behalf of [Fairview] all sums which [Fairview] shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by [an accident or occurrence].

St. Paul also issued two umbrella excess liability policies to Fairview covering May 9, 1970 to May 9, 1972. Under these policies St. Paul agreed:

> [St. Paul] will indemnify [Fairview] for all sums which [Fairview] shall be legally obligated to pay as damages, all as more fully defined by the term "ultimate net loss" on account of * * * Property Damage, * * * to which this Policy applies, caused by an occurrence.

Both the East Bethel and the Oak Grove Sanitary Landfills are located on the Anoka Sand Plain in soil predominantly consisting of fine and medium sand. In addition, wetlands are located near or adjacent to both landfills. Neither landfill had bottom liners

or leachate collection systems at any relevant time. Instead, waste was placed in direct contact with or in close proximity to the underlying soil and groundwater.

In 1982 groundwater sampling revealed the presence of volatile organic compounds [1] (VOCs) in groundwater near the East Bethel Sanitary Landfill. In March 1987 East Bethel Landfill's owner and operator, Sylvester Brothers Development Company (SBDC), signed a consent order with the Minnesota Pollution Control Agency (MPCA) in which SBDC agreed to implement remedial activities. SBDC subsequently sued a number of companies for contribution under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C §§ 9601–9657 (1983) (as amended by the Superfund Amendments and Reauthorization Act of 1986 (SARA), Pub.L. 99–499, 100 Stat. 1613), the Minnesota Environmental Response and Liability Act (MERLA), Minn.Stat. §§ 115B.01–115B.24 (1994), and common law theories. One of those companies then brought a third party action against Fairview seeking contribution and indemnification for the claims asserted by SBDC. Fairview notified St. Paul of the third party claims and St. Paul denied coverage.[2]

Fairview maintains that the liability for which St. Paul should provide coverage arose from contaminants it disposed of at the East Bethel Sanitary Landfill during the relevant policy periods. As evidence that disposal of these contaminants caused damage for which coverage is afforded, Fairview points to the testimony of Gerald Nelson, who testified that from approximately 1969 to 1973 he transported Fairview's waste, which included "a lot of cleaning solvent," to the East Bethel Sanitary Landfill. He recalled picking up five-gallon pails filled with solvents and occasionally a 55-gallon drum. Nelson further testified that the five-gallon containers were a regular part of Fairview's waste and were closed but leaked. He also testified that Fairview's waste was picked up daily. Fair-

view's own investigation concluded that some of the wastes transported by Nelson to the East Bethel Sanitary Landfill included the hazardous substance xylene, a VOC.

In 1984 groundwater testing revealed the presence of VOCs at the Oak Grove Sanitary Landfill. Because the owner and operator of the landfill failed to respond to a Request for Responsive Action issued by the MPCA, the MPCA and the Environmental Protection Agency (EPA) jointly conducted remedial studies at the landfill. Since state and federal funds were utilized to investigate and remediate the landfill, these agencies sought reimbursement from potentially responsible parties. In March or April 1991, the EPA sent a demand letter to Fairview requiring Fairview to provide information about its involvement at the landfill and asserting that Fairview was a potentially responsible party under CERCLA. In a letter dated December 27, 1991, St. Paul denied Fairview's request for defense and indemnification in this action.

Fairview's liability at the Oak Grove Landfill stems from the testimony of Harold Bobendrier, who testified that he transported waste to the Oak Grove Sanitary landfill. This waste was the same as that transported to the East Bethel Sanitary Landfill and included solvents and other VOCs. Based on this evidence, Fairview entered a consent decree with the EPA fully resolving its liability for $30,000.

In 1972 the groundwater beneath the East Bethel and Oak Grove Sanitary Landfills was tested and the Anoka County Board of Commissioners was informed:

> In summary we found no evidence of pollution of the shallow waters by garbage or other materials transported to the land fills. The waters tested were suitable for human consumption.

In 1978 a Metropolitan Council report on leachate generation at landfills in the Twin Cities also indicated no groundwater contamination existed at either landfill. In 1982 and

---

1. The detected VOCs included xylene which is a "hazardous substance" under applicable federal law. *See* 40 C.F.R. § 302.4 (1994).

2. On May 27, 1993, the Minnesota federal district court approved a settlement in which Fairview settled its liability relating to the East Bethel Landfill for $195,000.

1984, groundwater tests revealed the presence of VOCs in the groundwater beneath the landfills. Fairview claims that the reason no VOCs showed up prior to the 1980s is because no testing methodology existed for testing for VOCs until the 1980s. Fairview's assertions have merit.

Drinking water regulations for VOCs were not proposed until 1982. *See* 47 Fed.Reg. 9,350 (1982) (codified at 40 C.F.R. pt. 141) (proposed Mar. 4, 1982). Moreover, EPA regulations regarding the appropriate test methodology for the analysis of VOCs in water were not established until 1984. 40 C.F.R. § 136.1–.5 (1984).[3] Thus, any conclusion that prior to 1980 the groundwater beneath the East Bethel and Oak Grove landfills was acceptable, was, in all likelihood, not based on a consideration of the presence of VOCs.

Because the landfills were not tested for VOCs prior to the 1980s, Fairview's expert, Dr. Robert S. Guthrie, focused his efforts on determining when the VOCs from Fairview's waste would have initially reached the groundwater under the landfills. Dr. Guthrie's method of predicting the amount of time it would have taken to transport VOCs through the refuse and soil to the groundwater took into account (1) the soil conditions; (2) the depth to the water table; (3) the affinity of particular VOCs to adhere to the soil; (4) the climate conditions; (5) the physical characteristics of the waste in the landfill; and (6) the presence or absence of cover at the landfill. This data was then applied to a model to yield the amount of time it took for the VOCs to travel from the surface to the water table.[4]

Dr. Guthrie concluded that the VOCs impacted the groundwater under both landfills either instantaneously or, at most, within a few months. Since Fairview's waste containing VOCs was taken to the East Bethel Landfill in 1969, Dr. Guthrie concluded that damage to the groundwater from Fairview's waste first occurred with respect to the East Bethel site in 1969. For the same reasons, Dr. Guthrie testified that damage to groundwater at the Oak Grove landfill occurred in 1967. Fairview supplemented Dr. Guthrie's opinion with maps of the Anoka Sand Plain prepared by the Minnesota Geological Survey and the Minnesota Department of Natural Resources that indicate that transit times for water-borne contaminants from the surface to the water table for areas with soil composition such as those found at the East Bethel and Oak Grove landfills range from hours to months.

On September 8, 1993, the district court granted summary judgment in favor of St. Paul, concluding:

> The evidence presented by [Fairview] is speculative, generalized and non-specific and does not raise any issue of material fact regarding whether there was an occurrence during the policy periods.

On June 14, 1994, the court of appeals reversed the district court's judgment and concluded that a genuine issue of material fact existed as to whether an actual injury had occurred during the policy periods. *Fairview Hosp. & Health Care Servs. v. St. Paul Fire & Marine Ins. Co.*, 518 N.W.2d 41, 44–45 (Minn.App.1994).

---

**3.** St. Paul asserts that this court may not consider the authority cited in this paragraph because Fairview did not present it to the district court as evidence. We disagree. Just as a reviewing court may consider cases and statutes that were not presented to the district court, this court may consider rules and proposed rules set out in the Federal Register as well as publicly available articles that were not previously presented to the district court. *See Sylvester Bros. Dev. Co. v. Great Cent. Ins. Co.*, 480 N.W.2d 368, 376–77 (Minn.App.1992), *pet. for rev. denied* (Minn. March 26, 1992).

**4.** St. Paul contends this model was flawed. Because the district court did not exclude this model as unreliable pursuant to the rules set out by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, — U.S. ——, ——–——, 113 S.Ct. 2786, 2795–98, 125 L.Ed.2d 469 (1993), we do not address the accuracy of Fairview's expert's conclusions derived from this model, believing that the accuracy or inaccuracy of these conclusions should be addressed on cross examination and direct examination. *See Twin City Plaza, Inc. v. Central Sur. & Ins. Corp.*, 409 F.2d 1195, 1203 (8th Cir.1969) (stating that "[i]n most instances it is for the jury to decide which conduct contributed or caused all or part of the damage involved").

In an appeal from summary judgment, this court reviews two determinations: whether a genuine issue of material fact exists, and whether an error in the application of the law occurred. *Offerdahl v. University of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988). Evidence is viewed in favor of the party against whom the motion was granted. *Id.* St. Paul claims that the district court's grant of summary judgment was based on an evidentiary ruling that the conclusions of Fairview's experts were speculative. Thus, St. Paul claims that prior to a *de novo* determination of whether a genuine issue of material fact exists, this court should first evaluate the district court's evidentiary determination using an abuse of discretion standard. *See Williams v. Wadsworth,* 503 N.W.2d 120, 123 (Minn.1993) (stating that evidentiary determinations as to the qualifications of an expert witness are reviewed using an abuse of discretion standard).

The resolution of which standard of review is initially appropriate turns on whether the district court's ruling involved an evidentiary ruling. Here the district court found the "*evidence* presented by [Fairview] is speculative." (emphasis added). St. Paul claims that this language indicates that the district court concluded that Dr. Guthrie's testimony was based on speculation and that his opinions were based on hypothetical models that lacked scientific foundation. Other cases involving the exclusion of an expert's testimony as speculative often have involved a specific district court finding that the expert's testimony itself was speculative. *See, e.g., Kwapien v. Starr,* 400 N.W.2d 179, 183 (Minn.App. 1987) (stating trial court found expert testimony "speculative and lacking foundation"); *Wohlfeil v. Murray Mach., Inc.,* 344 N.W.2d 869, 875 (Minn.App.1984) (stating trial court found expert testimony was "sheer speculation"). In addition, district courts often invoke specific evidentiary rules when excluding expert testimony. *See, e.g., Benson v. Northern Gopher Enters.,* 455 N.W.2d 444, 445 (Minn.1990) (indicating that trial court excluded expert testimony pursuant to Minn. R.Evid. 104 and 703).

Here, the district court did not specifically find Dr. Guthrie's premises, methodology, or conclusions were speculative or based on conjecture. Moreover, the record indicates the district court did not cite to any rules of evidence relating to the exclusion of the expert's testimony. Instead, the district court indicated that the *evidence* was speculative. This determination implies that the district court considered evidence in addition to the testimony of Dr. Guthrie and found the evidence, in total, speculative. It is axiomatic that on a summary judgment motion a court may not weigh the evidence or make factual determinations, but must take the evidence in a light most favorable to the nonmoving party. *Murphy v. Country House, Inc.,* 307 Minn. 344, 351, 240 N.W.2d 507, 512 (1976). We conclude that the district court did not make an evidentiary determination, but rather it improperly weighed the evidence when it found that the evidence presented by Fairview in opposition to St. Paul's motion for summary judgment was speculative. Therefore, we review de novo.

This court has adopted the "actual injury" rule to determine whether a CGL policy was triggered. *Northern States Power Co. v. Fidelity & Cas. Co.,* 523 N.W.2d 657, 662 (Minn.1994). Only if a policy is in effect when the "actual injury" occurred is the CGL policy triggered. Thus, to survive summary judgment, Fairview must show only that a genuine issue of material fact exists as to whether an actual injury occurred during the policy period. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–88, 106 S.Ct. 1348, 1355–57, 89 L.Ed.2d 538 (1986); Minn.R.Civ.P. 56.03.

St. Paul contends that Fairview has not met its summary judgment burden because Fairview's expert presented evidence only that the contaminants impacted the groundwater during the policy periods. Thus, St. Paul contends, Fairview's expert did not present evidence of actual harm to the groundwater during the policy periods. St. Paul's argument is flawed. To survive summary judgment, Fairview need only present evidence that a genuine issue of material fact exists as to whether actual harm occurred during the policy periods. *Id.* Fairview need not prove that actual harm did occur. Here, Fairview provided evidence

that waste containing VOCs was transported to the landfills on a daily basis during the period of coverage. Evidence also exists that the waste was not in sealed containers and that neither landfill had bottom liners or leachate collection systems. Lastly, Fairview's expert provided testimony that given the soil, and the water table around the landfill, the groundwater was impacted either immediately or within a few months of the disposal of the waste. Thus, we conclude that the evidence Fairview submitted to the district court in opposition to St. Paul's motion for summary judgment was sufficient to demonstrate that a genuine issue of material fact exists as to whether an actual injury occurred during the policy periods at issue. Therefore, the district court erred as a matter of law by granting summary judgment in favor of appellant.

Finally, we affirm the court of appeals' determination that the issue of whether St. Paul breached its duty to defend should be addressed by the district court on remand.

Affirmed and remanded.

COYNE, J., took no part in the consideration or decision of this case.