SENTINEL MANAGEMENT COMPANY, et al., Plaintiffs, Respondents,

Kellogg Square Partnership, Respondent,

v.

AETNA CASUALTY AND SURETY COMPANY, et al., Defendants,

New Hampshire Insurance Company, petitioner, Appellant.

Nos. C2–98–2304, CX–98–2373.

Supreme Court of Minnesota.

Aug. 17, 2000.

Rehearing Denied Sept. 13, 2000.

820

Thomas A. Pearson, Cronan Pearson Quinlivan, Minneapolis, James T. Ferrini, Clausen Miller PC, Chicago, IL, Eric J. Magnuson, Rider Bennett Egan & Agundel, Minneapolis, Stuart Cotton, Wyner R. Glaubinger, Jeffrey C. Crawford, Mound, Cotton & Wollan, New York City, for appellant.

Lawrence A. Moloney, Gray Plant Mooty Mooty & Bennett, P.A., Minneapolis, Paul W. Mollica, Thomas R. Meites, Joan H. Burger, Meites, Mulder, Burger & Mollica, Chicago, IL, for respondents.

Kay Nord Hunt, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, for amicus curiae Defense Research Institute.

Heard, considered, and decided by the court en banc.

## OPINION

BLATZ, Chief Justice.

Defendant-appellant New Hampshire Insurance Company brings this appeal contending that the district court abused its discretion in admitting expert testimony on asbestos contamination that New Hampshire claims should have been excluded under Minnesota's evidentiary standard for scientific testimony. In addition, New Hampshire claims that even if the expert's testimony was properly admitted, the evidence still does not support the jury's finding that there was a direct physical loss to plaintiff-respondent Kellogg Square Partnership (KSP), which invoked coverage under New Hampshire's all-risk policy. We affirm on these issues. Plaintiffs-respondents Sentinel Management Company, et al., argue on cross-appeal that the district court erred in granting New Hampshire's motion for summary judgment on the ten properties other than that considered by the jury. We reverse on this issue and remand for a new trial.

This lawsuit involves 12 plaintiffs who sued 7 defendant insurers under all-risk,

first-party policies issued by the insurers and covering properties owned or managed by plaintiffs.[1] Ten of the plaintiffs are limited partnerships, and Sentinel Management is the general partner of each of these limited partnerships, and manages all of the buildings at issue. Plaintiffs alleged that asbestos fibers had been released in their ten primarily residential building complexes, and that the ensuing losses were covered under the policies provided by defendant insurers. Five defendants filed motions for summary judgment to determine which defendant's policy was in effect when the property damage manifested.[2] In addition, New Hampshire Insurance Company (New Hampshire) was added by stipulation as an additional defendant. Finally, plaintiffs filed an amended complaint, adding KSP, a general partnership that wholly owns the Kellogg Square building in St. Paul, also managed by Sentinel, as an additional plaintiff.

The district court concluded that for purposes of allocating indemnity between successive first-party insurers, coverage is triggered when appreciable damage becomes manifest such that the insured was or should have been aware of it. The court further concluded that the plaintiffs' losses manifested either in July 1991 or in August 1992, and therefore only New

Hampshire's two policies were implicated as they were the only policies in effect at that time.[3] Accordingly, the district court granted summary judgment for all remaining defendants except New Hampshire.

New Hampshire then filed a second motion for summary judgment, challenging whether plaintiffs had sustained "direct physical loss," necessary to coverage.[4] The district court denied the motion but certified to the court of appeals pursuant to Minn. R. Civ.App. P. 103.03(h) the questions concerning whether asbestos contamination could constitute a direct physical loss and whether such a loss was fortuitous.

The court of appeals held, inter alia, that asbestos contamination can constitute a direct physical loss to property under an all-risk insurance policy, and that such a loss is fortuitous. See Sentinel Management Co. v. New Hampshire Ins. Co., 563 N.W.2d 296, 300 (Minn.App.1997) (Sentinel I ). After the case returned to the district court, New Hampshire filed a motion in limine asking the court to exclude the testimony of plaintiffs' expert, Richard Hatfield, as well as other plaintiffs' experts and evidence. New Hampshire argued that Hatfield extrapolated from four positive dust samples taken from five apart-

---

1. There were 11 original plaintiffs and 6 original defendant insurers. The original plaintiffs were Sentinel Management Company and the following limited partnerships that had ownership interests in the buildings at issue: Ballantrae Associates, Chancellor Manor, Colonial Village, Equinox Properties, Sentinel II Limited Partnership, Oak Grove Towers Associates, Gateway Investors, Ltd., Stagecoach Company, Skyline Towers Company and Woodmere Associates. The original defendant insurers were Aetna Casualty and Surety Company, Reliance Insurance Company, Continental Insurance Company, Hartford Accident and Indemnity Company, Mission Insurance Company, and Mission National Insurance Company.

2. We note that the district court dismissed Mission Insurance Company and Mission National Insurance Company as defendants, as both companies were in the process of liquidation.

3. During trial, prior to submission of the case to the jury, the district court revised this ruling, finding that there was no evidence of manifestation during the New Hampshire policy covering January 1, 1991 through January 1, 1992, and therefore only the New Hampshire policy covering January 1, 1992 through January 1, 1993 was implicated.

4. All-risk policies include coverage "for all fortuitous losses not resulting from misconduct or fraud, unless the policy contains a specific provision expressly excluding loss from coverage." 13A George E. Couch, Couch on Insurance 2d § 48:141 (rev. ed.1982). New Hampshire's policy provided indemnity against "all risks of direct physical loss." Therefore, plaintiffs had to prove that the loss was both fortuitous and a direct physical loss.

ment units at the 450–unit Kellogg Square building to the conclusion that all of the apartments at Kellogg Square, as well as the other ten buildings at issue, were contaminated by asbestos fibers. New Hampshire further requested that the court exclude evidence of scientific sampling performed on the ten buildings other than Kellogg Square after the expiration of New Hampshire's policy.

The district court held a hearing pursuant to *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923), at which it allowed a voir dire of Hatfield and two building managers. Hatfield testified at the hearing that his conclusion that all 11 buildings were contaminated was based on his visual inspection of the properties and information from the building and maintenance managers that asbestos containing materials (ACMs) were used throughout all of the buildings managed by Sentinel. He also testified that he had reviewed hundreds of maintenance work orders for the 11 buildings at issue and that the orders demonstrated that the use and maintenance of the buildings involved activities that had gouged the ACMs and thereby released asbestos fibers.[5]

Rather than granting or denying New Hampshire's motion in limine, the district court instead granted summary judgment to New Hampshire and dismissed plaintiffs' claims against all properties other than Kellogg Square.[6] In granting summary judgment to New Hampshire, the district court concluded that plaintiffs could not raise an issue of material fact as to manifestation of loss in the other ten properties because there had been no scientific testing performed within them during the relevant policy period. As a result of this ruling, only KSP continued as a plaintiff because it was the sole owner of Kellogg Square, the only building remaining at issue. In addition, the district court denied New Hampshire's motion in limine to exclude Hatfield's testimony in regard to Kellogg Square. In response to New Hampshire's argument that Hatfield's testimony was unreliable due to his extrapolation, the court noted that Hatfield's extrapolation went to the weight rather than the admissibility of his testimony, and thus was a matter for the jury.

The matter then proceeded to trial. Hatfield testified that he tested dust gathered from five apartments and four of the samples were positive for asbestos fibers. He testified that this information, along with his visual inspection of Kellogg Square, his inspection of work orders, and information concerning tenant activities, led to his conclusion that all of Kellogg Square was contaminated by asbestos fibers. He also testified that his method for detecting asbestos contamination has been used by the Environmental Protection Agency and was published as a method by the American Society for Testing Materials and that he has been accepted as an expert on asbestos contamination by many state and federal courts. New Hampshire relied primarily on its cross-examination of Hatfield, and did not include rebuttal expert testimony in its case-in chief. The jury found that Kellogg Square sustained a direct physical loss and that the cost of removing the asbestos was $4,474,404.08.[7]

New Hampshire then made a motion for judgment notwithstanding the verdict (JNOV) or a new trial, again arguing, among other things, that Hatfield's conclusion that the entire 450–unit Kellogg Square building was contaminated was inadmissible as it was based on an unreliable extrapolation from only four positive dust

---

5. The work orders were for such maintenance tasks as replacing light bulbs, shower curtain rods, and closet door tracks.

6. To avoid confusion between parties, all plaintiff parties other than KSP will hereinafter be referred to collectively as Sentinel.

7. The district court entered an amended judgment on December 7, 1998, that raised KSP's award to $5,291,460.92, equal to the original award plus interest accrued to that date.

samples. The district court denied the motion.

New Hampshire appealed the denial of its motion and Sentinel cross-appealed the district court's dismissal of its claims concerning the ten buildings other than Kellogg Square. The court of appeals affirmed, agreeing with the district court that "the weaknesses in Hatfield's testimony were relevant to the weight of the evidence, not its admissibility." *See Sentinel Management Co. v. Aetna Cas. and Sur. Co.*, Nos. C2–98–2304, CX–98–2373, 1999 WL 540466, slip op. at 14 (Minn.App. July 27, 1999) (*Sentinel II*). The court of appeals also held that without scientific testing on the properties other than Kellogg Square during the relevant policy period, Sentinel could not present a genuine question of material fact on whether the contamination manifested during the policy period. *See id.* Both parties then appealed to this court.

## I.

■■■ The first question we address is whether the district court abused its discretion by admitting Hatfield's testimony concerning the asbestos contamination of Kellogg Square. New Hampshire claims that Hatfield's conclusion that Kellogg Square was contaminated by asbestos fibers should have been excluded as unreliable under the Minnesota *Frye–Mack* standard.[8] Minnesota adheres to the *Frye–Mack* standard for admission of evidence that is based on novel scientific techniques or principles. *See Goeb v. Tharaldson*, 615 N.W.2d 800, 814–15 (Minn. 2000). Under this two-prong standard, the scientific technique or principle at issue must be generally accepted within the relevant sci-

entific community. *See id.* In addition, its foundation must be reliable. *See id.*, at 815. Foundational reliability "requires the 'proponent of a * * * test [to] establish that the test itself is reliable and that its administration in the particular instance conformed to the procedure necessary to ensure reliability.'" *State v. Moore*, 458 N.W.2d 90, 98 (Minn.1990) (quoting *State v. Dille*, 258 N.W.2d 565, 567 (Minn.1977)). The determination of whether a proper foundation has been established is largely within the discretion of the trial court. *See State v. Bott*, 310 Minn. 331, 334, 246 N.W.2d 48, 51 (1976).

Although New Hampshire argues that Hatfield's methods are neither generally accepted nor reliable, their arguments all concern the reliability of those methods. Specifically, New Hampshire argues that Hatfield improperly extrapolated from four positive dust samples taken from only five units to conclude that the entire 450–unit building was contaminated. New Hampshire characterizes this extrapolation as unreliable "junk science" that should have been excluded, and claims the district court abused its discretion when it admitted Hatfield's testimony.

At the *Frye* hearing, the district court allowed an extensive voir dire of Hatfield. At the conclusion of the hearing, the court determined that Hatfield's extrapolation went to the weight, rather than to the admissibility of his testimony. We agree. The record clearly shows Hatfield's conclusion was based on much more than the four positive dust samples. Hatfield also relied on his visual inspection of the property and statements from the building managers that ACMs were used throughout the building.[9] The building managers

---

8. In addition to challenging the district court's admission of the evidence under *Frye–Mack,* New Hampshire also urges this court to adopt the principles of *Daubert* and its progeny to avoid the risks of unreliable scientific evidence being admitted. We rejected this argument in *Goeb v. Tharaldson,* 615 N.W.2d 800, 814–15 (Minn. 2000) and therefore need not address it here.

9. In addition, KSP points out that New Hampshire admitted that ACMs are used as ceiling material throughout Kellogg Square, and that once ACMs are disturbed, asbestos fibers are released.

also informed Hatfield that tenant and repair activities that tend to gouge the ACMs. and release dust containing asbestos fibers occurred throughout the building. Further, Hatfield inspected hundreds of work orders for replacing light bulbs, shower curtain rods, and closet door tracks—maintenance which can also gouge the ACMs and release dust containing asbestos fibers. In addition to the evidence in the record, we note that New Hampshire failed to put forward an expert of its own to counter Hatfield's testimony. As the district court stated, "there has been no refutation of Mr. Hatfield's analysis of the four contaminated pieces of carpet * * *. Whether that means that two square feet of the carpeting in Kellogg Square were contaminated or 800,000 square feet is a matter for the jury to determine."

█ In addition to challenging the number of dust samples taken, New Hampshire also asserts that Hatfield's testimony was unreliable because his conclusion as to contamination was not based on air samples. In support of its argument, New Hampshire cites to KSP's medical expert Dr. Arthur L. Frank's deposition testimony that asbestos fibers are only hazardous when airborne and then inhaled. New Hampshire argues that a conclusion as to asbestos contamination must be based, therefore, on air samples. This argument ignores the law of gravity. As Hatfield testified, once asbestos fibers are released, they will eventually settle, only to be reentrained into the air when disturbed. Further, two experts in addition to Hatfield testified that air sampling is useless unless done at a point when fibers are initially dislodged from the ACMs or disturbed in the carpet or tile and reentrained. While contamination might be proved with air samples, a jury could reasonably find that, given the presence of ACMs that were in fact disturbed or gouged, asbestos fibers were released in the air. Again, the absence of air sampling went to the weight, not the admissibility of Hatfield's testimo-

ny, and determining evidentiary weight is within the province of the jury. Upon review of the record, we conclude that the district court did not abuse its discretion in determining Hatfield's testimony was admissible.

## II.

█ New Hampshire argues next that the district court must be reversed even if Hatfield's testimony was properly admitted. Specifically, New Hampshire argues that KSP did not meet its burden of proving that a direct physical loss occurred, as it failed to show that a health hazard existed for the tenants of Kellogg Square due to asbestos contamination. Where a district court has denied a party's motion for JNOV, we will uphold the court's decision if "there is any competent evidence reasonably tending to sustain the verdict." *Rettman v. City of Litchfield,* 354 N.W.2d 426, 429 (Minn.1984). "Unless the evidence is practically conclusive against the verdict, we will not set the verdict aside." *Id.* (quoting *Sandhofer v. Abbott–Northwestern Hosp.,* 283 N.W.2d 362, 365 (Minn.1979)). Similarly, where a district court has denied a party's motion for a new trial based on the ground that the evidence does not justify the verdict, we will uphold the court's decision "unless the verdict is so contrary to the preponderance of the evidence as to imply that the jury failed to consider all the evidence or acted under some mistake or from some improper motive, bias, feeling or caprice, instead of honestly and dispassionately exercising its judgment." *Lamb v. Jordan,* 333 N.W.2d 852, 855–56 (Minn.1983) (quoting *LaValle v. Aqualand Pool Co.,* 257 N.W.2d 324, 328 (Minn.1977)).

In *Sentinel I,* the court of appeals held that even though "asbestos contamination does not result in tangible injury to the physical structure of a building, a building's function may be seriously impaired or destroyed and the property rendered useless by the presence of contaminants," thereby satisfying the definition of direct

physical loss. *Sentinel I*, 563 N.W.2d at 300. In *Sentinel II*, discussing further how a direct physical loss may result from the impairment of a building's function, the court of appeals held that "[a] principal function of any living space [is] to provide a safe environment for the occupants. If rental property is contaminated by asbestos fibers and presents a health hazard to the tenants, its function is seriously impaired." *Sentinel II*, 1999 WL 540466, slip op. at 14. The court of appeals held that to meet its burden of proving a direct physical loss, KSP had to show both that Kellogg Square was contaminated by asbestos fibers, and that the contamination presented a health hazard to the building's tenants. *See id.*

■■■ New Hampshire does not appeal the standard articulated, but argues that KSP did not prove a direct physical loss because KSP never established that a health hazard existed for the tenants of Kellogg Square. Specifically, New Hampshire claims that KSP's own witnesses testified that asbestos fibers must be airborne to constitute a health hazard, and because no air sampling was performed in Kellogg Square, KSP did not establish a health hazard. The record reveals that New Hampshire misrepresents the testimony of KSP's witnesses, and we conclude that New Hampshire's argument is otherwise unpersuasive.

As noted previously, air sampling is of questionable utility in determining contamination because asbestos fibers, like all particulates, will settle to the ground and remain there until disturbed. Although Dr. Frank testified in deposition that only inhaled, and therefore airborne, asbestos fibers are hazardous, KSP presented ample evidence that once settled asbestos fibers are disturbed, they are reentrained into the air and thereby become hazardous. Therefore, it does not follow that testing for airborne fibers is necessary to prove that asbestos contamination in Kellogg Square constituted a health hazard for the building's tenants.

Second, in its brief New Hampshire quotes Kellogg Square manager Alessandro Bernardi's testimony that "[t]here wasn't any asbestos in the air * * *." The remainder of the quote, which New Hampshire omitted, is "but at the same time, if you disturb [the ceiling ACMs], you're going to have asbestos in the air * * *." Similarly, New Hampshire cites a letter sent by the managers of Kellogg Square to the building's tenants for the proposition that the ceiling material in Kellogg Square is hard and does not release fibers. In fact, the letter was referring to asbestos-containing floor tiles. New Hampshire also ignores that portion of the letter that warns "tenants not [to] disturb the asbestos-containing materials, most specifically the ceiling material, by cutting, drilling or abrading the material," and the letter's statement that "it is important to avoid unnecessary damage to asbestos-containing materials because it could result in a release of asbestos fibers into the air."

Finally, arguing that none of KSP's experts testified that there was a health hazard, New Hampshire selectively cites to the testimony of KSP's experts. The cited testimony, however, when read in conjunction with the surrounding testimony, does not support this claim, as KSP's experts did in fact testify that asbestos contamination constituted a health hazard. For the foregoing reasons, we hold that New Hampshire has failed to show that KSP did not meet its burden of proving a direct physical loss and hold that New Hampshire is therefore not entitled to a JNOV or a new trial on this ground.

## III.

■■■ We now address the cross-appeal of plaintiffs-respondents Sentinel that the district court erred in dismissing on summary judgment its claims of asbestos contamination in the buildings at issue other than Kellogg Square. Following the *Frye* hearing, the district court determined that without scientific testing to confirm that the buildings other than Kel-

logg Square were contaminated, Sentinel could not show that a genuine issue of material fact existed on whether asbestos fiber contamination occurred within the relevant policy period, i.e., whether appreciable damage occurred.[10] The district court then dismissed Sentinel's claims as to all buildings other than Kellogg Square.

The court of appeals denied Sentinel relief and adopted the district court's "manifestation trigger" ruling that would find coverage when: (1) appreciable damage occurred during the policy period; and (2) "the damage was or should have been known to the insured, such that a reasonable insured would have been aware that his notification duty under the policy had been triggered." *Sentinel II,* 1999 WL 540466, slip op. at 7–8; *see also Prudential–LMI Commercial Insurance v. Superior Court of San Diego County,* 51 Cal.3d 674, 274 Cal.Rptr. 387, 798 P.2d 1230, 1247 (1990) (announcing the manifestation trigger rule for first-party property insurance cases). To survive summary judgment, Sentinel needed to present evidence creating genuine issues of material fact on both prongs. *See Sentinel II,* 1999 WL 540466, slip op. at 9; *see also State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990).

The court of appeals concluded that, with respect to Sentinel's properties other than Kellogg Square:

1) Sentinel presented no evidence that any of the ten buildings other than Kellogg Square were scientifically tested for asbestos contamination during the policy period;

2) Sentinel presented evidence that similar ACMs were present throughout Kellogg Square and the other ten buildings;

3) Sentinel presented evidence that many normal activities disturb ACMs and cause the release of asbestos fibers;

4) Sentinel presented evidence that such activities took place to some degree in all eleven buildings;

5) In 1992, Sentinel confirmed that samples taken from Kellogg Square were indicative of asbestos contamination.

*See Sentinel II,* 1999 WL 540466, slip op. at 8–9. In light of the first prong of the manifestation trigger – that appreciable damage must occur during the policy period – the court of appeals' first determination was key to its holding. The court of appeals held that "[d]ue to the lack of scientific evidence, we conclude the trial court was correct in determining that the available evidence was too speculative to support Sentinel's claim that its buildings other than Kellogg Square were contaminated during the policy period." *Id.,* slip op. at 9.

Sentinel argues that the district court and court of appeals erred in requiring scientific testing and that its proffered evidence was sufficient to establish a question for the jury. Our standard of review for summary judgment is de novo. *See Fairview Hosp. & Health Care Servs. v. St. Paul Fire & Marine Ins. Co.,* 535 N.W.2d 337, 341 (Minn.1995). We have held that a district court's grant of a motion for summary judgment will not be disturbed

> when the nonmoving party presents evidence which merely creates a metaphysical doubt as to a factual issue and which is not sufficiently probative with respect to an essential element of the nonmoving party's case to permit reasonable persons to draw different conclusions.

*DLH, Inc. v. Russ,* 566 N.W.2d 60, 71 (Minn.1997).

 We conclude that scientific testing should not be a prerequisite for satisfying the first prong of the manifestation trigger standard. Although scientific testing was not performed during the poli-

**10.** Although the *Frye* hearing occurred in the context of a motion in limine brought by New Hampshire, the record demonstrates that the motion was actually treated as a motion for summary judgment by the district court and was reviewed as such by the court of appeals. *See Sentinel II,* 1999 WL 540466, slip op. at 8.

cy period on the buildings other than Kellogg Square, there was nonetheless evidence of asbestos contamination, i.e., the same ÀCMs were used in all of the buildings, and tenant and maintenance activities that can gouge ACMs occurred in all of the buildings.[11] This remaining evidence of asbestos contamination raises more than a metaphysical doubt about a factual issue. Therefore, Sentinel has established a genuine question of material fact as to whether appreciable damage occurred within the policy period.[12] See Prudential–LMI Comm. Ins., 274 Cal.Rptr. 387, 798 P.2d at 1247 (stating that "the date of the manifestation and hence the date of the inception of the loss will, in many cases, be an issue of fact for the jury to decide.") We therefore reverse the district court's dismissal of Sentinel's claims on the buildings other

11. Although scientific testing confirming asbestos contamination was performed at several of the properties other than Kellogg Square, it was performed in 1994 and 1995, after New Hampshire's policy period had ended.

12. We note that our reading of the record indicates that the district court agreed with Sentinel that there was a genuine issue of material fact on the second prong of the manifestation trigger. The court of appeals, concluding that Sentinel had not satisfied the first prong, declined to reach the second prong. See Sentinel II, 1999 WL 540466, slip op. at 9.

13. The dissent asserts that "without testing[,] a conclusion that asbestos is present is pure speculation, and thus proof of appreciable damage and manifestation fails." The dissent goes on to then blend together its analysis of whether appreciable damage occurred during the policy period with its analysis of what scientific evidence may come in under Frye–Mack. In doing so, the dissent substitutes the standard of review for evidentiary determinations for the standard of review for summary judgment. Under Frye–Mack, a district court's determination on whether a proper foundation of reliability has been established for the admission of scientific evidence is reviewed under an abuse of discretion standard. See Goeb, at 814–15. In contrast, we review a district court's determination on summary judgment de novo. See Russ, 566 N.W.2d at 71.

than Kellogg Square and remand for further proceedings in accordance with this opinion.[13]

Affirmed in part, reversed in part, and remanded.

STRINGER, Justice (concurring in part, dissenting in part).

I concur with the holding of the majority that the Frye–Mack reliability standard was met with respect to the Kellogg Square building and that direct physical loss was demonstrated to trigger coverage, but I respectfully disagree with and dissent from the court's holding that the manifestation trigger standard can be met with respect to the remaining ten buildings in the absence of testing.

Contrary to the dissent's contention, in reversing the district court's determination on summary judgment we do not hold that the district court abused its discretion in excluding evidence. In fact, it is unclear from the transcript that the district court ever excluded any evidence of asbestos contamination at the ten buildings other than Kellogg Square, other than the scientific testing performed after the policy period had expired. What is clear is that both the district court and court of appeals concluded that without scientific testing performed during the policy period, Sentinel could not present a genuine issue of material fact to the jury as to whether appreciable damage occurred in the ten properties during the relevant policy period. It is with this conclusion, and the dissent's, that we disagree.

Should Sentinel wish to proceed to trial on the ten properties other than Kellogg Square, the court will determine then whether Sentinel's proffered evidence of contamination is reliable under Frye–Mack. Like the district court, we have not ruled on this issue. What we have ruled is that, as a matter of law, scientific testing is simply not the only form of evidence that is sufficient to raise a question of fact on whether appreciable damage occurred in the ten properties during the policy period. To that end, we disagree with the dissent's statements suggesting that the prospective Frye–Mack hearing is an all-or-nothing proposition. The district court may allow, limit or exclude expert testimony offered in any future hearings on this matter. The admissibility and limits of that testimony are not before us at this time.

There is coverage under the manifestation trigger standard when appreciable damage occurred during the policy period and the damage was or should have been known to the insured. *See Sentinel Management Co. v. Aetna Cas. and Surety*, Nos. C2–98–2304, CX–98–2373, 1999 WL 540466, slip op. at 7–8 (Minn.App. July 27, 1999) (*Sentinel II*). What the majority fails to recognize is that appreciable damage can only be demonstrated by proving that the buildings were contaminated during the policy period, and contamination can only be proven by expert opinion, admissible because it meets the *Frye–Mack* reliability standard.

The *Frye–Mack* two-prong standard requires, first, that the scientific technique or principle must be generally accepted within the scientific community and, second, that its foundation must be reliable. *See Goeb v. Tharaldson*, 615 N.W.2d 800, 814–15 (Minn. 2000); *see also State v. Moore*, 458 N.W.2d 90, 97 (Minn. 1990). In *Moore* we further held as to scientific testing that "[a] proper foundation for a scientific test requires the 'proponent of a * * * test [to] establish that the test itself is reliable and that its administration in the particular instance conformed to the procedure necessary to ensure reliability[,]' " and that the reliability of a particular test or technique in a given case must be demonstrated. *Moore*, 458 N.W.2d at 98 (quoting *State v. Dille*, 258 N.W.2d 565, 567 (Minn. 1977)).

Sentinel presented no evidence of scientific testing in the remaining ten buildings. It relied on samples from Kellogg Square indicative of asbestos contamination and piggy-backed the sample testing at Kellogg Square on evidence that ACM's, as well as maintenance activities that disturb ACM's and cause the release of asbestos fibers, were present in the remaining ten buildings. But this is all Sentinel proved with respect to the other buildings. There was no evidence to meet even the requirement of Sentinel's own scientific expert that the "only way to definitely establish that asbestos is present in a * * * sample of dust is to perform a microscopic analysis of [the] material * * *." *Sentinel II*, 1999 WL 540466, slip op. at 9. Sentinel's expert stated the obvious–that without evidence to conclude asbestos is present through microscopic testing of samples, differences in the nature of the material or construction could result in wide variations in the asbestos suspension–for example the composition of the wall and ceiling materials in each building may be different, affecting the characteristics of suspension of asbestos in the dust particles. But without testing a conclusion that asbestos is present is pure speculation, and thus proof of appreciable damage and manifestation fails.

Beyond the holding here however, by its ruling that testing of the other buildings is not required, the majority dilutes to the point of near meaninglessness the *Frye–Mack* standard requiring that the scientific testing be reliable and "in the particular instance" conform to reliable procedures. In one fell swoop the majority allows the issue of appreciable damage to proceed to trial and rules that the *Frye–Mack* reliability standard is satisfied as to Hatfield's testimony. The majority leapfrogs over the *Frye–Mack* analysis in its rush to conclude that there was appreciable damage in the form of asbestos contamination. Making the leap that the *Frye–Mack* reliability standard is met with respect to ten separate buildings in the absence of testing of any of those buildings guts the *Frye–Mack* analysis and I can only assume that the majority would now reach the same conclusion with respect to any building where the "Kellogg Square formula"–(presence of asbestos) + (routine maintenance activities) = (contaminated building)–is met.

In the absence of meeting even minimal *Frye–Mack* requirements of reliable testing, the manifestation trigger standard cannot be reached. I would affirm the conclusion of both the district court and court of appeals that the evidence present-

ed by Sentinel does not satisfy the manifestation trigger standard.